SO ORDERED: April 5, 2012.



Basil H. Lorch III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| EASTERN LIVESTOCK CO., LLC, ) | CASE NO. 10-93904-BHL-11 |
|     Debtor. ) | |
| _____ ) | |
| SUPERIOR LIVESTOCK AUCTION, INC., ) | |
|     Plaintiff, ) | |
|     v. ) | ADV. NO. 11-59088 |
| ) | |
| EASTERN LIVESTOCK CO., LLC, ) | |
|     Defendant. ) | |
| _____ ) | |
| JAMES KNAUER, as Chapter 11 Trustee for ) | |
| Debtor, Eastern Livestock Co., LLC., ) | |
|     Counterclaimant and Third-Party ) | |
|     Plaintiff, ) | |
|     v. ) | |
| ) | |
| SUPERIOR LIVESTOCK AUCTION, INC., ) | |
| FIFTH THIRD BANK, FRIONA ) | |
| INDUSTRIES, L.P., CACTUS GROWERS, INC., ) | |
| and J & F OKLAHOMA HOLDINGS, INC., ) | |
|     Counterclaim and Third-Party ) | |
|     Defendants. ) | |
| _____ ) | |

**ORDER ON TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING DELIVERED CATTLE**

This proceeding was initiated by the filing of the Complaint of Superior Livestock Auction, Inc. for Declaratory Relief on April 12, 2011, and comes before the Court on the **Trustee's Motion for Partial Summary Judgment Regarding Delivered Cattle** [Docket No. 81] which was filed on November 4, 2012. The **Response to Trustee's Motion for Partial Summary Judgment Regarding Delivered Cattle** was filed on December 9, 2011, and the **Trustee's Reply Brief in Support of Motion for Partial Summary Judgment Regarding Delivered Cattle** was filed on December 27, 2011. **Fifth Third Bank's Reply to Superior's Response to Trustee's Motion for Partial Summary Judgment Regarding Delivered Cattle** was filed on December 23, 2011, and finally, Superior filed its **Surreply Brief Relating to Trustee's Motion for Partial Summary Judgment Regarding Delivered Cattle** on January 13, 2012.

Background Facts

According to its Complaint for Declaratory Relief, Superior conducts video auctions and operates as a third-party broker for ranchers, farmers, and other producers [collectively "Farmers"] of cattle. Superior conducts its operations from its headquarters in Brush, Colorado, but engages representatives throughout the United States to solicit cattle from Farmers for Superior's auctions.

Farmers sold a total of 54,019 head of cattle to the Debtor, Eastern Livestock Co., LLC ["Eastern"], through auctions conducted by Superior. Those sales were memorialized by 500 written contracts ["Buy Contracts"] between the Farmers and Eastern that are the subject of this adversary proceeding.[1]

---

[1] While Superior facilitated significantly more transactions than the 500 that are the subject of this proceeding, it has limited the Court's consideration to only these particular contracts.

Eastern acted as a dealer or "middleman" buying and selling cattle, typically entering into contracts with third-party buyers to resell the cattle that Eastern bought at Superior's auctions before the Farmers actually delivered the purchased cattle. Generally, Eastern arranged the deliveries and directed the Farmers to deliver Eastern's cattle directly to designated truckers for transport to Eastern's third-party buyers.

Pursuant to the terms of the Buy Contracts, Eastern paid Superior down payments of $40 per head of cattle contemporaneously with the execution of the Buy Contracts with the remaining purchase price to be paid to Superior, as agent for the Farmers, at the time of delivery or no later than the first business day thereafter. The Buy Contracts grant Superior a security interest in the cattle sold and the proceeds thereof until such time as Superior receives final payment of the full purchase price. Risk of loss, under the Buy Contracts, "passes to Buyer [Eastern] at the time that the livestock are loaded on the carrier."

On November 8, 2010, after Eastern had failed to pay the remaining purchase prices specified in the Buy Contracts, Superior and Eastern entered into an "Assignment of Livestock Contracts" ["Assignment"] which purported to convey all of Eastern's right, title, and interest in the subject cattle to Superior. A state court receiver was appointed the following day, and within sixty (60) days thereafter, the underlying bankruptcy case was commenced by the filing of an involuntary petition. Superior claims that it gave notice to Eastern of its decision to unilaterally terminate the Buy Contracts on November 10, 2010 ["Notice of Termination"].

Superior filed the instant adversary proceeding seeking a declaratory judgment that it is the sole owner of the Buy Contracts, the cattle that Eastern purchased under the Buy Contracts, and the related sale proceeds arising from Eastern's subsequent resale of the cattle (which includes a

3

substantial portion of the funds currently held by the Court in the Texas Interpleader case, Adv. Pro. No. 11-59093). The Trustee has filed a counterclaim in this proceeding to contest the Assignment and Notice of Termination and has added other parties who assert various rights and interests in the subject cattle and related sale proceeds.

Superior filed a Motion for Partial Judgment on the Pleadings, seeking a determination that it is entitled to the "safe harbor" protection afforded by section 546(e) or (g) of the Bankruptcy Code. The Court, concurrently herewith, has made a preliminary finding that the 500 Buy Contracts are "forward" contracts, but has denied the Motion as to whether the Buy Contracts may be considered "swap agreements" or whether Superior was acting as a forward contract merchant pending a trial on the merits. Although the safe harbor defense would defeat the Trustee's potential strong arm and preference claims under sections 544 and 547, or fraudulent transfer claims under section 548(a)(1)(B), it would not serve as a defense to a claim under 11 U.S.C. § 548(a)(1)(A).

The Motion which is now before the Court involves Superior's claimed interest in a distinct segment of the 500 Buy Contracts. Rather than filing an avoidance action regarding the Assignment in its entirety, the Trustee asks the Court, by and through the instant Motion, to grant partial summary judgment as to 246 of the 500 Buy Contracts. As to those particular Buy Contracts, the Trustee asserts that the cattle lots were delivered to Eastern on or before November 5, 2010, and prior to the execution of the Assignment on November 8, 2010 [the "Delivered Cattle"]. He further alleges that Eastern immediately resold and delivered most of the cattle to third-party buyers, pursuant to agreements between Eastern and those buyers ("Sell Contracts") before the execution

4

of the Assignment.[2]

The Trustee seeks a declaration from the Court that title to the Delivered Cattle passed to Eastern and that Eastern, in turn, passed title to third-party buyers, all before the effective date of the Assignment. As to those Delivered Cattle, the Trustee contends that the Assignment and Notice of Termination was ineffective and transferred no rights or interests to Superior. The Trustee also asserts that Superior did not obtain any rights to the Delivered Cattle, or Eastern's receivables arising from its resale of the Delivered Cattle, or other rights, interests or proceeds in or arising from Eastern's Sell Contracts with the third-party buyers.

Standard of Review

Summary judgment is mandated where there are no disputed issues of material fact and the movant must prevail as a matter of law. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must affirmatively show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 323; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] In support of its statement, the Trustee identifies 21 such transactions by and between Eastern and third-party buyers, Friona, Cactus, and J&F.

When reviewing facts in support of a motion for summary judgment, a court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-American, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). The court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249.

## Discussion

Superior asserts that there are genuine issues of material fact in dispute which preclude the grant of summary judgment on the subject controversy. Specifically, Superior contends that the Trustee's basic assumptions regarding Superior's status as a consignee and the legal transfer of title is flawed.

The Trustee, in response to the foregoing, contends that its classification of Superior as a "consignee" is of no import in its argument in support of summary judgment. The Court is inclined to agree. Whether Superior is dubbed a "consignee" or "market agent" or "facilitator" in its transactions with Farmers and with Eastern, it does not alter the nature of the agreements between the parties or affect the rights of the parties under the Assignment. As such, Superior's status as a "consignee" is not a material fact in this dispute.

Next, Superior argues that there is a question regarding applicable law and the nature of the title transferred. The Trustee asserts that the transfer of title is governed by UCC § 2-401, which provides that, "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." In his Motion, however, the Trustee notes that he "does not take a position regarding which state's

6

version of the UCC governs . . . . [inasmuch as he] knows of no variations in the versions of the UCC in effect in the various states whose law may be chosen to govern these issues that are material with respect to this motion."

Superior rightly points out that it is the Trustee's burden to establish which law applies to the controversy and that taking no position regarding applicable law does not satisfy his burden of proof. Furthermore, applicable versions of the UCC are indeed different in the states of Colorado, Montana, and Oregon.[3] The Court agrees that a determination of applicable law is a threshold matter which must be resolved before proceeding to the merits. The parties have not presented argument on that point and it is, as yet, unclear which law governs the issue at hand. Not only were the Delivered Cattle transported across state lines, implicating various state and federal laws, but the terms of the Buy Contracts explicitly provide that Colorado law governs disputes regarding payment.

The Buy Contracts further provide that "Seller shall furnish to Buyer any brand and health certificates required for interstate shipment and Federal Law." In the event Indiana law is found to

---

[3] The Montana version of section 2-401, at Mon. Code 30-2-401(4), contains an additional sub-section which pertains specifically to the interstate shipment of cattle:
> (4) For transactions involving interstate shipment of cattle or cattle being released from auction yards for interstate shipment the seller may issue a regular title or bill or sale, or give a conditional transfer of title or bill of sale. The conditional transfer of title or bill of sale is fully validated and the title passes when the following conditions are met:
>> (a) the bank on which the buyer's warrant, check, or draft was drawn notifies the seller, or the seller's designated bank, that the instrument of payment has cleared the bank for payment; and
>> (b) a copy of the notification from the buyer's bank is attached to the conditional transfer of title or bill of sale.

The Oregon version, at Oregon Rev. St. 72.4010(4) states:
> (4) When livestock has been delivered under a contract of sale and is transported by private, common or contract carrier, if on the accompanying brand inspection certificate or memorandum of brand inspection certificate the seller has noted that as consideration for the sale of the livestock a draft, check, certificate or deposit or note has been given, title does not pass until the instrument is paid.

control, title would pass upon delivery regardless of payment.[4]  If, however, Colorado law is found to control, and assuming that the cattle was accompanied by a brand certificate, Colo.St. § 4-2-401(5) provides:

> Notwithstanding any other provision of this section, when livestock have been delivered under a contract of sale, if on the accompanying brand inspection certificate or memorandum of brand inspection certificate the seller has conspicuously noted that payment of the consideration for the sale has not been received, title does not pass until payment is made.

It is undisputed that Eastern did not fulfill its purchase price obligations under the Buy Contracts. So, under the Colorado statute, if the brand inspection certificates contained a notation of nonpayment, title to the livestock would not pass until Eastern paid Superior. The Trustee dismisses the foregoing hypothetical since Superior has not produced evidence of, or even alleged that there was, a notation of nonpayment on any brand inspection certificates.

    It is true that, once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the burden shifts to the opposing party to affirmatively show that there is a genuine issue of material fact for trial. But this case has not progressed that far.  Given the essential and undisputed facts of this case, the Trustee has not satisfied his burden of proof as to applicable law.  Until the Court makes a determination as to what law applies, no analysis of the parties' substantive rights can be undertaken.

    For all of the foregoing reasons, the Court finds that the Trustee's Motion for Partial Summary Judgment must be, and accordingly is, **DENIED.**

###

---

[4] Such statement is without regard to Superior's argument that § 2-403 of the UCC requires a further analysis of whether any subsequent third party buyers are good faith purchasers for value.